# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC ANGEL THOMAS,<br><br>　　　　　　　　Petitioner,<br><br>v.<br><br>PATRICK EATON, Warden, et al.,<br><br>　　　　　　　　Respondents. | Case No. 3:22-cv-00033-BAS-BLM<br><br>**ORDER:**<br><br>**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS;**<br><br>**(2) DENYING CERTIFICATE OF APPEALABILITY** |

   Petitioner Eric Angel Thomas ("Petitioner" or "Thomas") is a state prisoner proceeding pro se with an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"). Thomas challenges his conviction in San Diego Superior Court Case No. SCD282431 for transporting and possessing a controlled substance for sale. The Court has read and considered the Petition, and the Memorandum of Points and Authorities in Support of the Petition (ECF Nos. 1, 1-2), the Answer and Memorandum of Points and Authorities in Support of the Answer (ECF No. 10, 10-1), the Traverse and Memorandum of Points and Authorities in Support of the Traverse (ECF Nos. 12, 12-1), the lodgments and other documents filed in this case, and the legal arguments presented by both parties. For the reasons discussed below, the Court **DENIES** the Petition (ECF No. 1) and

**DISMISSES** the case with prejudice. The Court also **DENIES** a certificate of appealability.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Although a federal habeas court generally gives deference to state court findings of fact and presumes them to be correct, a petitioner may rebut the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (2006); *see also Parle v. Fraley*, 506 U.S. 20, 35–36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The state appellate court recited the facts as follows:

> On the afternoon of July 9, 2019, a police officer observed a vehicle driving northbound on 14th Street in the East Village of San Diego. The vehicle accelerated from a stop sign at a high rate of speed, stopped at a second stop sign, accelerated again, and drove at a high rate of speed through a third intersection. The vehicle swerved into another lane to avoid a pedestrian standing in a crosswalk, then continued down the street and turned onto another street.
>
> The area was very congested with pedestrian and vehicle traffic. The officer believed the driver violated the Vehicle Code's basic speed law because driving with rapid acceleration at high speeds was unsafe for the prevailing conditions of the area where a lot of pedestrians, bicycles, scooters, and pedicabs were moving around the urban area. The police officer and his partner followed the vehicle and conducted a traffic stop. They drove in excess of the posted 25-mile-per-hour speed limit to catch up to the vehicle. Thomas was the driver and the sole occupant of the vehicle.
>
> Before approaching the vehicle, the officer conducted a records check and discovered Thomas was the registered owner and he was on PRCS, which meant he likely had a Fourth Amendment waiver. After Thomas confirmed he was subject to supervision, the officers conducted a search based upon his Fourth Amendment waiver condition.
>
> Officers found $340 in small bills and a plastic bindle containing 2.3 grams of methamphetamine in Thomas's pants pocket. In a backpack, they found two additional bindles holding 7.14 grams of methamphetamine along with plastic baggies and a working digital scale. In another backpack, officers located a glass container along with more baggies containing crystalline

material. In the center console of the vehicle, officers located 100 unused small zippered baggies with yellow biohazard logos.

Thomas did not appear to be under the influence of methamphetamine during the traffic stop and he did not exhibit physical characteristics of a heavy methamphetamine user. A detective opined Thomas possessed the methamphetamine for sale rather than personal use.

(Lodgment No. 5 at 3–4, ECF No. 11-13.)

## II.  ANALYSIS

### A.  Legal Standard

Thomas's Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id*. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous—to warrant

habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the federal habeas court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

**B.     Discussion**

Thomas raises five grounds to justify his Petition. In ground one, he contends the initial traffic stop of his car was in violation of the Fourth Amendment. (Pet. 6, ECF No. 1; Pet'rs Mem. of P. & A. 13–25, ECF No. 1-2.) In ground two, he claims the search of his car and person violated the Fourth Amendment. (Pet. 7; Pet'rs Mem. of P. & A. 25–39.) He argues in ground three that the state trial court improperly failed to review and consider the suppression motion he made when he was representing himself. (Pet. 8; Pet'rs Mem. of P. & A. 39–41.) In ground four, he claims the prosecutor improperly withheld the transcript of his first suppression hearing, violating his due process rights. (Pet. 9; Pet'rs Mem. of P. & A. 41–43.) And in ground five, Thomas argues his sentence is illegal and violates his equal protection rights. (Pet. 10; Pet'rs Mem. of P. & A. 43–45.)

Respondent argues that grounds one through three of Thomas's Petition are barred by *Stone v. Powell*, 428 U.S. 465 (1976), which held that Fourth Amendment claims are

not cognizable on federal habeas corpus review. (Answer 12–15, ECF No. 10-1.) As to grounds four and five, Respondent contends the state courts' denial of these claims were neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (*Id.* at 17–21.)

### 1. Fourth Amendment Claims (Grounds One and Two)

In grounds one and two, Thomas contends his Fourth Amendment rights were violated when police stopped his car without reasonable suspicion and proceeded to search him and his car. (Pet. 6; Pet'rs Mem. of P. & A. 11–38; Pet'rs Mem. of P. & A. Traverse 14–15, ECF No. 12-1.) "[W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494; *Woolery v. Arave*, 8 F.3d 1325, 1326 (9th Cir. 1993); *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990). Under California law, Thomas had the opportunity to litigate, and in fact did litigate, the validity of his traffic stop. (*See* Lodgment No. 2, vol. 1, ECF No. 11-2.) *See also* Cal. Penal Code § 1538.5; *Gordon*, 895 F.2d at 613 (stating that "[w]hether or not [a defendant] did in fact litigate [his] [F]ourth [A]mendment claim in state court, he did have the opportunity to do so" and thus "the Constitution does not require that [a petitioner] be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."). Thomas also raised his Fourth Amendment claim on direct appeal. (*See* Lodgment No. 5 at 4–8.) Thus, because Thomas had "an opportunity for full and fair litigation of [his] Fourth Amendment claims" in state court, he is not entitled to federal habeas relief. *Stone*, 428 U.S. at 494; *Gordon*, 895 F.2d at 613–14.

### 2. Due Process (Ground Three)

Thomas contends in ground three that his due process rights were violated when the trial court judge denied the motion without reviewing the transcript of the original suppression hearing. (Pet. 8; Mem. of P. & A. 39–41; Mem. of P. & A. Traverse 15–16.) After his initial suppression motion was denied, Thomas began to represent himself.

(Lodgment No. 2, vol. 2.) He then filed a renewed motion to suppress pursuant to California Penal Code § 1538.5. (Lodgment No. 2, vol. 3 at 5–6.) During the hearing on pretrial motions, the judge asked Thomas why he should be permitted to renew the suppression motion, noting no new evidence or law had been presented to justify a renewal. (*Id.* at 8.) Thomas told the judge his attorney had not challenged the prosecution's assertion that the traffic stop was valid based on the officer's testimony that Thomas had violated the basic speed law. (*Id.* at 9.) The prosecutor told the judge that Thomas's attorney had in fact argued at the hearing that there was no reasonable suspicion to conduct a traffic stop based on the basic speed law. (*Id.* at 9–10.) Relying on the prosecutor's representation, the judge denied Thomas's request to renew his suppression motion, concluding that Thomas had not presented any change in circumstances, nor any new evidence. (*Id.* at 10–11.)[1]

Thomas raised this claim in the habeas corpus petition he filed in the California Supreme Court. (Lodgment No. 8, ECF No. 11-16.) The state supreme court summarily denied the petition. (Lodgment No. 9, ECF No. 11-17.) Accordingly, this Court must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *Himes*, 336 F.3d at 853.

Although styled as a due process claim, Thomas is challenging the state court's denial of his renewed motion to suppress evidence on Fourth Amendment grounds. As discussed above, Fourth Amendment claims are not cognizable on federal habeas corpus review where a petitioner, like Thomas, had a "full and fair' opportunity to litigate the claim. *Stone*, 428 U.S. at 494. Further, to the extent that Thomas is challenging the

---

[1] The officer who stopped Thomas testified at the original suppression hearing that the reason for the stop was a violation of the basic speed law. (Lodgment No. 2, vol. 1 at 10, 17.) Defense counsel questioned the officer thoroughly regarding his observations of Thomas's driving and argued that there was insufficient evidence to support finding that the stop was reasonable in part because the officer could not definitively state how fast Thomas was going. (*Id*. at 15–18, 20–24. ) The state court judge based her ruling upholding the stop primarily on the officer's testimony that he observed Thomas in violation of the basic speed law. (*Id*. at 26–27.)

application of state law regarding the procedures for filing a renewed motion to suppress, he is also not entitled to relief because federal habeas corpus relief is not available for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C. § 2254(a).

In any event, the state court's ruling was consistent with California Penal Code § 1538.5. "As a general rule, a defendant is allowed only one pretrial suppression motion under section 1538.5 in the superior court, and that court is without jurisdiction to hear a second motion." *People v. Arebalos-Cabrera*, 27 Cal. App. 5th 179, 191 (2018), quoting *People v. Nelson*, 126 Cal. App. 3d 978, 981 (1981) (internal quotation marks omitted). While the statute permits a new suppression motion at trial based on the discovery of new evidence or a change in the law, "[i]t does not allow serial *pretrial* motions based on new law or evidence." *Id.* (citing *People v. Williams*, 93 Cal. App. 3d 40, 59–60 (1979) (emphasis in original)).

For the foregoing reasons, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Bell*, 535 U.S. at 694. Thomas is not entitled to relief as to this claim. *See* 28 U.S.C. § 2254(d).

### 3. Failure to Provide Exculpatory Material (Ground Four)

In ground four, Thomas contends the prosecution withheld exculpatory evidence, namely the transcript of the original suppression hearing, in violation of his federal due process rights. (Pet. 9; Mem. of P. & A. 41–43; Mem. of P. & A. Traverse 16.) Thomas raised this claim in the habeas corpus petition he filed in the California Supreme Court. (Lodgment No. 8.) The state supreme court summarily denied the petition. (Lodgment No. 9.) Thus, this Court again must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *Himes*, 336 F.3d at 853.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held a prosecutor must disclose all material evidence, including impeachment evidence, to the defendant. *Brady*, 373 U.S. at 87. In order to establish a *Brady* violation, Thomas must prove three elements: (1) the evidence was suppressed by the prosecution, either willfully or

inadvertently; (2) the withheld evidence was either exculpatory or impeachment; and (3) the evidence was material to the defense. *See Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *Benn v. Lambert*, 283 F.3d 1040, 1052–53 (9th Cir. 2002) (citing *United States v. Bagley*, 473 U.S. 667, 676, 678 (1985) and *United States v. Agurs*, 427 U.S. 97, 110 (1976).) "Evidence is deemed prejudicial, or material, only if it undermines confidence in the outcome of the trial." *Benn*, 283 F.3d at 1053 (citing *Bagley*, 473 U.S. at 676 and *Agurs*, 427 U.S. at 111–12). "Moreover, we analyze all of the suppressed evidence together, using the same type of analysis that we employ to determine prejudice in ineffective assistance of counsel cases." *Id.* (citing *Bagley*, 473 U.S. at 682 and *United States v. Shaffer*, 789 F.2d 682, 688–89 (9th Cir. 1986).) "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Thomas has not established the elements of a *Brady* claim. He has not explained what evidence the transcript of the suppression hearing contained that was either exculpatory or impeachment. *Strickler*, 527 U.S. at 281–82. Nor has he explained how any such evidence "undermine[s] confidence in the outcome of [his] trial." *Benn*, 283 F.3d at 1053. The claim is based on speculation that the transcript contained exculpatory or impeachment material. Therefore, the state court's denial of this claim cannot be found to have been contrary to, or an unreasonable application of, clearly established Supreme Court law. *Bell*, 535 U.S. at 694. Thomas is not entitled to relief as to this claim. *Id.*; 28 U.S.C. § 2254(d).

### 4. Sentencing (Ground Five)

Thomas alleges in ground five the sentence he received violates his federal due process and equal protection rights. (Pet. 10; Mem. of P. & A. 43–45; Mem. of P. & A. Traverse, 17–19.) Specifically, he claims the state court judge improperly sentenced him to prison even though he was not subject to a mandatory prison sentence. (Pet. 10; Mem. of P. & A. 43–45; Mem. of P. & A. Traverse 17–19.) Thomas raised this claim in the

habeas corpus petition he filed in the California Supreme Court. (Lodgment No. 8.) The state supreme court summarily denied the petition. (Lodgment No. 9.) Thus, this Court must again conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *Himes*, 336 F.3d at 853.

Thomas argues his sentence was illegal under California law because "[former] California Penal Code § 1203.073(b)(2) is a statutory guideline that set the standard for the amount of methamphetamine required for California courts to impose mandatory prison sentence, which must be 28.5 grams or more." (Mem. of P. & A. 43.) Errors in the application of a state's sentencing laws are generally not cognizable on federal habeas review because they do not involve a federal question. *See Nelson v. Biter*, 33 F. Supp. 3d 1173, 1177 (C.D. Cal. June 17, 2014) (citing *Miller v. Vasquez*, 868 F.2d 1116, 1118–19 (9th Cir. 1989). Thus, to the extent Thomas is challenging his sentence on state law grounds, he is not entitled to relief as to this claim. *Estelle*, 502 U.S. at 67–68.

In any event, former section § 1203.073(b)(2) does not say what Thomas claims. Former California Penal Code § 1203.073 (a) states, "[a] person convicted of a felony specified in subdivision (b) may be granted probation only in an unusual case where the interests of justice would best be served." Cal. Penal Code § 1203.073 (repealed by Stats. 2021, c. 537 (S.B. 73), eff. Jan. 1, 2022). Subdivision (b) states, in pertinent part:

(b) Except as provided in subdivision (a), probation shall not be granted to . . .

. . . .

(2) Any person who is convicted of section 11378 of the Health and Safety Code by possessing for sale, or Section 11379 of the Health and Safety Code by selling a substance containing 28.5 grams or more of methamphetamine or 57 grams or more of a substance containing methamphetamine.

*Id*.

The code section does not say that only violations of Health and Safety Code § 11379 which involve "28.5 grams or more of methamphetamine or 57 grams or more of a substance containing methamphetamine" can be deemed felonies. The only application § 1203.073 had to Thomas's case was to make him presumptively ineligible for probation because he was convicted of a violation of Health and Safety Code § 11378. (Lodgment No. 2 vol. 7 at 5–6.)

Both of the Health and Safety Code violations Thomas was found guilty of, § 11379(a) (transportation of a controlled substance) and §11378 (possession for sale of a controlled substance), were felonies. (Lodgment No. 1 at 7–11, ECF No. 11-1; Lodgment No. 2 vol. 7 at 5–6.) The sentencing range for a § 11379(a) conviction is two, three, or four years in state prison. Cal. Penal Code § 11379(a). Thomas admitted he had a "strike" prior conviction. (Lodgment No. 2, vol. 7 at 10 –11.) The strike prior had two effects on Thomas's sentence. First, it made him statutorily ineligible for probation pursuant to California Penal Code § 667(c)(2)[2] and § 1170.12(a)(2),[3] and second it doubled the base prison term he received pursuant to California Penal Code § 667(d)(1) and § 1192.7(c)(1)(19). The sentencing judge chose the upper term of four years, finding that aggravating factors outweighed mitigating ones, for a total of eight years, which is the sentence he received. Cal. Penal Code § 1170.12(c)(1). (Lodgment No. 1 at 226–27; Lodgment No. 2, vol. 8 at 15.) Thomas has not shown there was any error in his sentence, much less an error which was "'so arbitrary or capricious as to constitute an independent due process' violation." *Id*. (citing *Richmond v. Lewis*, 506 U.S. 40, 50, (1992).) Accordingly, the state court's denial of this claim was neither contrary to, nor an

---

[2] California Penal Code § 667(c)(2) states, in pertinent part, "if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior serious or violent felony convictions as defined in subdivision (d), . . . [p]robation for the current offense shall not be granted." Cal. Penal Code § 667(c)(2).

[3] California Penal Code § 1170.12(a)(2) states, in pertinent part, "if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior serious or violent felony convictions, as defined in subdivision (b) . . . [p]robation for the current offense shall not be granted." Cal. Penal Code § 1170.12(a)(2).

unreasonable application of, clearly established Supreme Court law. *Bell*, 535 U.S. at 694. Thomas is not entitled to relief as to this claim. 28 U.S.C. § 2254(d).

Thomas also argues his sentence violated his equal protection rights. The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Vacco v. Quill*, 521 U.S. 793, 799, (1997) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982) and *Tigner v. Texas*, 310 U.S. 141, 147 (1940); *Fraley v. Bureau of Prisons*, 1 F.3d 924, 926 (9th Cir. 1993) (per curiam). To establish an equal protection violation, a petitioner must first demonstrate "that the [challenged] statute, either on its face or in the manner of its enforcement, results in members of a certain group being treated differently from other persons based on membership in that group." *McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir. 1999). "Second, if it is demonstrated that a cognizable class is treated differently, the court must analyze under the appropriate level of scrutiny whether the distinction made between the two groups is justified." *Id*. (citation and quotations omitted). Unless a legislative classification warrants some form of heightened review because it targets a suspect class or burdens the exercise of a fundamental right, the Equal Protection Clause requires only that the classification be rationally related to a legitimate state interest. *See Vacco*, 521 U.S. at 799. "Suspect or quasi-suspect classes have four characteristics: (1) a history of discrimination; (2) a defining characteristic that often bears a relationship to its ability to perform or contribute to society; (3) a defining trait that is immutable or distinguishable and establishes it as a discrete group; and (4) political powerlessness or minority status." *Calvary Chapel of Ukiah v. Newsom*, 524 F. Supp. 3d 986, 1005 (E.D. Cal. 2021) (citing *Karnoski v. Trump*, 926 F.3d 1180, 1192 (9th Cir. 2019)).

Thomas is not a member of a suspect class. *See United States v. Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011) (stating that "neither prisoners nor 'persons convicted of crimes' constitute a suspect class for equal protection purposes"); *see also Virgin Islands v. Hodge*, 359 F.3d 312, 326 (3d Cir. 2004) ("The Supreme Court has not announced that the status

of 'criminal defendant' is a suspect classification[.]"). Thus, the three strikes statute, under which Thomas was sentenced, need only be rationally related to a legitimate government interest. *Vacco*, 521 U.S. at 799. "California has a valid 'public-safety interest in incapacitating and deterring recidivist felons.'" *Gonzalez v. Duncan*, 551 F.3d 875, 886 (9th Cir. 2008) (citing *Ewing v. California*, 538 U.S. 11, 29 (2003); *see also Parke v. Raley*, 506 U.S. 20, 27 (1992) ("States have a valid interest in deterring and segregating habitual criminals."); *Solem v. Helm*, 463 U.S. 277, 296 (1983) ("State is justified in punishing a recidivist more severely than it punishes a first offender."). Sentencing certain offenders who have previously committed serious or violent felonies to lengthier sentences than other offenders is rationally related to that legitimate end. *See Raley*, 506 U.S. at 27 (("[W]e have repeatedly upheld recidivism statutes 'against contentions that they violate constitutional strictures dealing with . . . equal protection . . . .' ") (citations omitted)).

Thomas cites to *People v. Ramos*, 244 Cal. App. 4th 99 (2016) as support for his contention that his equal protection rights have been violated. (Mem. of P. & A. 44.) In *Ramos*, Gloria Ramos was convicted of possessing 2.9 grams of methamphetamine for sale, was granted probation, and ordered to serve 365 days in jail. *Ramos*, 244 Cal. App. 4th at 100–01. Thomas is not similarly situated to Ramos. Thomas had suffered a strike prior which, as discussed above, made him statutorily ineligible for probation while Ramos had not. *Id.*

For all the foregoing reasons, the state court's denial of Thomas's equal protection claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Bell*, 535 U.S. at 694. Thomas is not entitled to relief as to this claim. 28 U.S.C. § 2254(d).

### III.  CONCLUSION

For the foregoing reasons, the Petition is **DENIED**. Rule 11 of the Rules Following 28 U.S.C. § 2254 require the District Court to "issue or deny a certificate of appealability ["COA"] when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254 (2019). A COA will issue when the petitioner makes a "substantial showing of the

1 | denial of a constitutional right." 28 U.S.C. § 2253 (2019); *Pham v. Terhune*, 400 F.3d 740,
2 | 742 (9th Cir. 2005). A "substantial showing" requires a demonstration that "'reasonable
3 | jurists would find the district court's assessment of the constitutional claims debatable or
4 | wrong.'" *Beaty v. Stewart*, 303 F.3d 975, 984 (9th Cir. 2002) (quoting *Slack v. McDaniel*,
5 | 529 U.S. 473, 484 (2000)). Here, the Court concludes Thomas has not made the required
6 | showing, and therefore a COA is **DENIED**.

**IT IS SO ORDERED.**

**DATED: June 22, 2022**

Hon. Cynthia Bashant
United States District Judge